IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANWAR VIVIAN,<br>    Petitioner | :    CIVIL ACTION<br>:<br>: |
| v. | :<br>: |
| GERALD ROZUM, et al.,<br>    Respondents | :<br>:    NO. 09-CV-3822 |

## MEMORANDUM AND ORDER

Ditter, J.                                                                         March 15, 2010

Anwar Vivian was convicted in state court of first degree murder and sentenced to life in prison. He now petitions for a writ of *habeas corpus* on the grounds that he was denied due process, equal protection, and that his trial counsel was ineffective. For the reasons that follow, I will deny his petition.

## I. FACTUAL BACKGROUND

In his opinion setting forth why he had denied Vivian's post-sentencing motions, the trial judge, the Honorable William R. Toal, Jr., described the pertinent events in this way.

> On December 19, 2001, at a bus stop in Upper Darby, the defendant had a verbal confrontation with a group of young men that included Conrad Roberson, Kenneth and Darryl Williams and Lorenzo Rankins. The confrontation escalated between the defendant and Darryl Williams when they both boarded a public bus and began fighting on the bus. This resulted in Darryl Williams being removed from the bus. This confrontation was the harbinger of another confrontation two days later that led to the death of James Lajoie.
>
> On Friday, December 21, 2001, sometime around 5:00 pm, Conrad Roberson, Lorenzo Rankins, Rasheen Lyles, James Lajoie were at Suong Le's house playing pool with him. They decided to get food at a local deli on Pembroke Avenue in East Lansdowne. At the intersection of Pembroke and Penn

Boulevard, East Lansdowne, they saw someone on the other side of the intersection near some bushes. The person crossed Pembroke, yelled to the group and by words and gestures made what was perceived by the group to be a threat. The person pulled out a gun and the group of young men ran in different directions as shots were fired. Conrad Roberson and Suong Le ran in one direction and Lorenzo Rankins, Rasheen Lyles and the victim ran in a different direction. A number of shots were fired at Lorenzo Rankins, Rasheen Lyles and the victim, James Lajoie. James Lajoie called to the others saying he thought he was hit. He staggered and fell and died at the scene as result gunshot wounds.

After the shooting, the defendant went to the State of Washington. On his return to this area, he was arrested in a house in Philadelphia by the police who found him hiding in a closet.

At the time of the trial, the four young men who were present at the time of the shooting all testified and identified the defendant as the shooter. He was described as wearing a black hoody. He was known to all of them as the boyfriend of the daughter of one of the men involved in the basketball program where the group played basketball.

In addition to the testimony of the four young men, a passenger in an automobile who had no connection with any of the group of young men or the defendant, saw the incident take place. He was in a motor vehicle that stopped at the intersection to allow the group of young men to cross the intersection. He saw the five young men crossing the street and another individual coming from Penn Boulevard. He saw that individual pull a gun and fire at the group as they ran away. Although he did not identify the defendant, he described the shooter as wearing a hoody and a light colored jacket. At the time of the shooting it was dark, but all witnesses, including the passenger, described the shooter as being under a street light that lighted up the intersection.

There was some question concerning the lighting conditions and the identification of the defendant as the shooter. However, these questions were resolved when the defendant testified and placed himself at the scene and admitted wearing a black hoody and jacket as described by the various witnesses, including the passenger in the motor vehicle. He admitted being involved in the altercation at the bus stop placing blame on the group of young men that were present and further testified that Lorenzo Rankins made threats at that time to him and displayed silver revolver. He testified that it was Lorenzo Rankins who pulled the gun and did the shooting that caused the death of James Lajoie. He denied having a gun and shooting the victim. The defendant further explained that his trip the state of Washington was for the purpose of seeing an uncle in order to get money to hire a lawyer. He explained that he hid in the closet from

the police at the time of his arrest because he feared for his safety at the hands of the police.

*Commonwealth v. Anwar Vivian,* No. 75-02 (Jan. 23, 2004) slip op. 2-4., *Resp. App.* Ex. H.

Prior to trial, but in a proceeding before the court, Vivian's counsel had explained to him that he was committing himself to a defense of misidentification and reasonable doubt and that her opening statement and cross-examination would be based on that strategy. The defendant said he understood and agreed with counsel's plan. His decision during trial to testify was against counsel's strong advice and completely sabotaged counsel's defense that his presence at the scene had not been established beyond a reasonable doubt.

Vivian was found guilty of first degree murder, two counts of recklessly endangering another person, and the illegal possession of a firearm.

## II. PRIOR PROCEEDINGS

Judge Toal appointed a new attorney to represent Vivian at sentencing, for post-trial motions, and for an appeal. The subsequent motions were denied and on March 21, 2003, Judge Toal sentenced Petitioner to life imprisonment for the murder conviction and consecutive sentences on the other charges. On January 27, 2005, the Superior Court of Pennsylvania affirmed the judgment of sentence and the Supreme Court of Pennsylvania denied Vivian's petition for an allowance of appeal.

On December 28, 2005, Vivian filed a timely *pro se* petition for relief under the Post-Conviction Relief Act. Judge Toal appointed new counsel, Henry DiBenedetto Forrest, to represent Vivian. On December 7, 2006, pursuant to *Commonwealth v. Finley,* 379 Pa. Super. 390 (1988), Mr. Forrest submitted an 11-page letter detailing the nature and extent of his review

of the record and why in his judgment the petition had no merit. He asked for leave to withdraw. Judge Toal issued a notice of intent to dismiss the PCRA petition without a hearing, stating that a review of the *Finley* letter and his own review of the record justified his doing so. Vivian timely filed objections to this notice claiming he had not been informed of the specific reasons for the court's notice of its intent to dismiss. Judge Toal granted permission for counsel to withdraw and accompanied by an opinion detailing his reasons, issued a second notice of his intent to dismiss the PCRA petition without a hearing. Again, Vivian filed timely objections but nevertheless, on August 23, 2007, Judge Toal dismissed his PCRA petition.

Vivian's subsequent appeal to the Superior Court of Pennsylvania was also unavailing.

On August 20, 2009, Vivian timely filed this petition for a writ of *habeas corpus*.

### III. STANDARD OF REVIEW

The provisions of the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d), govern this matter and impose a heavy burden on applicants for a writ of *habeas corpus* who are seeking relief from a state court judgment. The writ is not to be granted with respect to any claim that was decided on the merits in state court unless the adjudication of that claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). In addition, a determination of a factual issue made by a state court shall be presumed to be correct and a *habeas corpus* applicant has the burden of rebutting that

presumption by clear and convincing evidence. 28 U.S.C. § 2254(e).

## IV. THE *HABEAS* PETITION

Vivian advances three reasons for the grant of his petition:[1]

    a.) trial counsel was ineffective for advancing and (sic) absolutely futile reasonable doubt/misidentification defense rather than viable theories of self-defense/justification and voluntary manslaughter;

    b.) the PCRA court denied me Due Process and Equal Protection by failing to consider my objections to its intended dismissal; and

    c.) the Superior Court denied me those same rights by failing to even consider my argument, instead simply adopting the reasoning of former PCRA counsel's Finley letter, and also inexplicably finding one aspect of my claim was "undeveloped."

Vivian's first claim is basically the stem from which his other contentions grow. Simply stated he claims that trial counsel's choice of strategy was wrong and she was therefore ineffective. What he fails to state is the fact that he first of all agreed to it and then sabotaged it.

Judge Toal made the following findings in his decision of November 2007[2] dismissing the PCRA petition:

> The record plainly evinces the initial plan to challenge the identification of the Defendant as the shooter.
>
> ... trial counsel and the Defendant – before trial – agreed to employ the reasonable doubt/identification defense at trial.

As Judge Toal also found,

> Defense counsel vigorously cross-examined witnesses regarding their

---

[1] *Pet's Traverse* (Doc. # 16). While a "Traverse" is not a proper federal pleading, I accept this document and have considered it.

[2] Actually, in response to Vivian's objections to Judge Toal's initial notice of his intention to dismiss the PCRA petition, Judge Toal filed this same opinion on June 28, 2007. *See Resp. App.* Exh. U.

-5-

identification of the Defendant. Any effort to propound self-defense would necessarily place the Defendant at the scene of the crime and eviscerate identification as an issue in the case.

*Commonwealth v. Vivian*, No. 75-02 (Nov., 2007) slip op. 6, *Resp. App.* Exh. W.

Judge Toal supported these findings by reference to a pre-trial proceeding where trial counsel explained that Vivian had agreed to a reasonable doubt defense and that if he decided to testify after trial started, that by her opening statement and cross examination, she would have already committed to that strategy. Vivian said he understood.

Consistent with this pre-trial colloquy, trial counsel's opening statement and cross-examination of the Commonwealth witnesses were based on the agreed misidentification strategy. Nonetheless, Vivian decided to testify against counsel's advice.

In its opinion affirming the dismissal of the PCRA petition, the Superior Court referred with approval to the *Finley* letter which concluded that Vivian had agreed to a mistaken identity/reasonable doubt defense and that in light of this strategy, Vivian had agreed he would not testify.

These findings are presumed to be correct. Vivian has not provided any evidence, much less clear and convincing evidence, to rebut this presumption.

*Strickland*[3] requires that counsel's performance be based on counsel's perspective at the time it takes place – not with the wisdom of hindsight. Here, Vivian agreed to the misidentification/reasonable doubt defense and therefore it was correct for counsel to proceed on that basis.

There is no merit in Vivian's contention that he was denied the effective assistance of

---

[3] *Strickland v. Washington*, 466 U.S. 668 (1984).

-6-

counsel.

Vivian's second assertion in support of his *habeas* petition is that he was denied due process and equal protection because Judge Toal dismissed his PCRA petition without considering Vivian's objections to his doing so.

Vivian is wrong. His first objection was a replay of his contention that counsel's trial strategy was wrong and his second, that counsel should have objected to the prosecutor's closing argument.

By order dated August 23, 2007, Judge Toal noted that he had specifically addressed both of these contentions in his opinion of June 28, 2007. Indeed, he had done so. There is no merit in Vivian's claim to the contrary.

The Superior Court affirmed the dismissal of the PCRA petition. Vivian contends that the Superior Court denied him due process and equal protection because it failed to consider his arguments, adopted the findings of the *Finley* letter, and found his claim about the possibility of a voluntary manslaughter defense had not been developed. This claim has no merit.

Vivian presented one issue to the Superior Court. He contended that his PCRA counsel, Henry DeBenetto Forrest, Esquire, was ineffective because he had not filed an amended PCRA petition alleging that trial counsel had been ineffective for advancing a reasonable doubt/misidentification defense rather than a one of voluntary manslaughter or self defense. This is a bizarre contention.

In his *Finley* letter, Mr. Forrest discussed this same assertion and concluded that Vivian had agreed to the reasonable doubt/misidentification strategy, had agreed he would not testify at trial, and then sabotaged the plan by testifying. Mr. Forrest also reviewed the standards

announced by *Strickland* and determined there was no merit to Vivian's claims for PCRA relief.

Having spent 11 pages in explaining why Vivian's contention lacked merit, just how Mr. Forrest could, would, or should present a petition that there was merit to it after all quite escapes me.

## V. CONCLUSION

I have reviewed Vivian's contentions. They lack merit. There is no basis for *habeas* relief. An appropriate order follows.